**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Oskowis, | No. CV-17-08070-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Sedona Oak-Creek Unified School District #9, | |
| Defendant. | |

The plaintiff in this matter is Matthew Oskowis ("Oskowis"), the father of E.O., a 13-year-old boy diagnosed with infantile autism. Over the past few years, Oskowis has filed at least nine due process complaints against the Sedona Oak-Creek Unified School District No. 9 (the "District"), each alleging that E.O. was denied a free appropriate public education as guaranteed by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Three of those complaints are at issue here—Oskowis appeals their dismissal, for failure to state a claim, by Administrative Law Judges ("ALJs") from the Arizona Office of Administrative Hearings. This matter comes before Court on the District's motion for summary judgment. (Doc. 68.) As explained below, the Court affirms the dismissal of Oskowis's due process complaints and therefore grants summary judgment in favor of the District.

## BACKGROUND

I.  The IDEA's Legal Framework

It's helpful to begin by briefly summarizing the legal framework against which this

case unfolded. "The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748-49 (2017). "Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE. . . . Crafted by a child's 'IEP Team'—a group of school officials, teachers, and parents—the IEP spells out a personalized plan to meet all of the child's 'educational needs.' Most notably, the IEP documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Id.* (citations omitted).

The IDEA also establishes formal procedures for resolving disputes. "To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). That pleading generally triggers a '[p]reliminary meeting' involving the contending parties; at their option, the parties may instead (or also) pursue a full-fledged mediation process. Assuming their impasse continues, the matter proceeds to a 'due process hearing' before an impartial hearing officer. . . . Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court." *Id.* at 749 (citations omitted).

This case arises from three administrative proceedings that were initiated when Oskowis filed due process complaints with the Arizona Department of Education, each arguing that E.O. had been denied a FAPE.

II. <u>The Administrative Proceedings</u>

A. **16C-DP-066-ADE**

On June 16, 2016, Oskowis filed a due process complaint in proceeding 16C-DP-066-ADE. (Doc. 69 ¶ 10.) In it, he argued the District denied E.O. a FAPE over three

calendar years because: (1) the District didn't provide a qualified paraprofessional to E.O.; (2) the paraprofessional provided by the District wasn't adequately supervised by the special education teacher; and (3) the IDEA precludes E.O.'s paraprofessional from providing services within E.O.'s self-contained special education classroom. (*Id.* ¶ 11.)

On June 24, 2016, the District filed a response. Included as attachments to the response were "affidavits from two of [E.O.'s] prior special education teachers attesting that they provided direct supervision of the paraprofessional" as well as evidence demonstrating the paraprofessional's qualifications. (Doc. 75-1 at 11; *see also* Doc. 69 ¶¶ 12-15, 17-20.)

During a "prehearing conference," the ALJ asked Oskowis to address the evidence that had been submitted by the District. In response, Oskowis "acknowledged . . . that [he] had no information or belief to support [his] allegation that the paraprofessional did not meet the requirements . . . to be considered a qualified paraprofessional" and similarly "offered no basis for [his] allegation that the special education teacher did not properly supervise the paraprofessional." (Doc. 75-1 at 10-11; *see also* Doc. 69 ¶ 16.)

Accordingly, on March 13, 2017, the ALJ issued an order dismissing Oskowis's complaint for failure to state a claim. (Doc. 75-1 at 9-12.) The order concluded: "Given the baseless assertions presented in the Complaint, Petitioners' Complaint is deemed frivolous. IT IS ORDERED granting Respondent School District's Motion to Dismiss the Complaint." (*Id.* at 12.)

B. **17C-DP-013-ADE**

On September 1, 2016, Oskowis filed a due process complaint in proceeding 17C-DP-013-ADE. (Doc. 69 ¶ 2.) In it, he argued the District denied E.O. a FAPE by failing "to monitor [E.O.'s] progress against the annual goals & objectives of [his] IEP [and] their corresponding STOs [Short Term Objectives]" and failed "to engage the IEP Team to revise the IEP to address the lack of expected progress of [E.O.] toward those STOs." (*Id.* ¶ 3.)

On September 9, 2016, the District moved to dismiss for failure to state a claim.

On March 10, 2017, the ALJ issued an order granting the District's motion. (Doc. 75-1 at 2-6.) The order concluded: "Petitioners' Complaint fails as a matter of law and should be dismissed as the claims therein are not supported by the IDEA or its regulations. Given the [rejection of the same argument in past proceedings] and the lack of any support in the IDEA or its regulations on this claimed issued, the Petitioners' instant Complaint is deemed to be frivolous." (Doc. 75-1 at 6.)[1]

C. **17C-DP-053-ADE**

On March 2, 2017, Oskowis filed a due process complaint in proceeding 17C-DP-053-ADE. (Doc. 69 ¶ 23.) In it, he argued the District denied E.O. a FAPE because, between August 5, 2015 and December 16, 2015, the District didn't begin delivering services to E.O. until 9:00 a.m., which "would not allow enough time for the services of the IEP to be adequately delivered." (*Id.* ¶ 24.)

On March 9, 2017, the District moved to dismiss for failure to state a claim.

On March 10, 2017, the ALJ issued an order granting the District's motion, and on March 28, 2017, the ALJ issued an order denying reconsideration. (Doc. 75-1 at 14-17.) The March 28 order concluded: "Petitioners' instant due process complaint fails as a matter of law and should be dismissed. Based on the fact that Petitioners' previous two complaints on the exact same issue were dismissed, Petitioners knew or should have known that the Complaint does not raise a valid claim under the IDEA. For this reason, Petitioners' instant due process complaint is deemed to be frivolous." (Doc. 75-1 at 16.)

III. The Instant Case

Oskowis filed a complaint with this Court on April 13, 2017. (Doc. 1.) The operative complaint asserts three causes of action, each corresponding to one of the administrative proceedings described above. (Doc. 17.) Oskowis claims that the ALJs

---

[1] Although the order stated the "Complaint is dismissed as a matter of law for failure to state a claim" (Doc. 75-1 at 6), it also included a footnote suggesting the ALJ was making a "summary judgment determination" rather than "a possible sufficiency determination." (Doc. 75-1 at 2 n.1.)

erred in dismissing his due process complaints. (*Id.*)

On June 22, 2018, the District moved for summary judgment on all three causes of action. (Doc. 68.)[2] The issues are now fully briefed (Docs. 68, 70, 75).[3]

**JURISDICTION**

Before addressing the District's motion for summary judgment, the Court must assure itself that it has subject matter jurisdiction. *United Inv'rs Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments. . . . Here the district court had a duty to establish subject matter jurisdiction . . . *sua sponte*, whether the parties raised the issue or not.").

The jurisdictional analysis is complicated here by the fact that the ALJs didn't actually hold due process hearings with respect to Oskowis's three complaints—instead, the ALJs dismissed each complaint via a written order without holding such a hearing. Were this Court writing on a clean slate, the absence of a due process hearing might pose a jurisdictional obstacle. This is because the IDEA only vests federal courts with jurisdiction to consider lawsuits brought by plaintiffs "aggrieved by the findings and decision made under subsection (f)." 20 U.S.C. § 1415(i)(2)(A). "[S]ubsection (f) concerns due process hearings, and the only decision contemplated by the plain meaning of that subsection is the decision following the due process hearing." *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1087 (9th Cir. 2012). Accordingly, some courts have concluded they lack jurisdiction to review an ALJ's decision dismissing a due process complaint without a due process hearing.[4]

---

[2] Although the District refers to this procedure as a "motion for summary judgment," the Ninth Circuit has noted that "the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Capistrano Unified Sch. Dist. v. Wartenberg By and Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

[3] The District requested oral argument, but the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[4] *See, e.g., G.R. ex rel. Russell v. Dallas Sch. Dist. No. 2*, 2010 WL 5232958, *8 (D. Or. 2010) ("[The IDEA] provides an appeal to district court of the findings and decision resulting from a due process hearing. If the hearing officer deems a complaint insufficient,

- 5 -

Nevertheless, the Court is not writing on a clean slate. In *M.M.,* although the Ninth Circuit held that a plaintiff cannot pursue a piecemeal appeal of the dismissal of some of his IDEA claims while other claims remain pending before the ALJ, the court stated in a footnote that "[w]e do not hold that an ALJ's order completely dismissing a due process complaint without a due process hearing would not give rise to a right of judicial review. If the ALJ completely dismisses the matter, the dismissal is final and judicially reviewable." 681 F.3d at 1090 n.12. That is the precise circumstance presented here—the ALJs completely dismissed all three of Oskowis's complaints by issuing written orders in lieu of holding due process hearings. Indeed, the ALJs certified, in the final paragraph of each order, that the decision constituted a "final decision at the administrative level" pursuant to 20 U.S.C. § 1415(i) and that "any party aggrieved by the findings and decisions made herein has the right to bring a civil action . . . in a district court of the United States." (Doc. 75-1 at 6, 12, 17.) Accordingly, and even though footnote 12 in *M.M.* was arguably dicta, the Court concludes that it has subject matter jurisdiction over this action.

## STANDARD OF REVIEW

"In IDEA cases, unlike other cases reviewing administrative action, we do not employ a highly deferential standard of review. Nevertheless, complete *de novo* review is

---

no due process hearing takes place. If there is no due process hearing, there are no findings and decision resulting from the hearing. As a consequence, there is no judicial review because judicial review is limited to findings and decisions resulting from due process hearings."); *Knight v. Washington Sch. Dist.*, 2010 WL 1909581, *4 (E.D. Mo. 2010) ("[W]ithout [a due process] hearing, district court review under § 1415(i)(2)(A) is unavailable because federal jurisdiction under that provision is limited to reviewing determinations from § 1415(f) hearings. This conclusion—that IDEA does not provide for judicial review of a hearing officer's conclusion as to whether a due process complaint filed under the Act is sufficient—is also supported by the legislative history of the Act."). *But see M.S.-G ex rel. K.S.-G v. Lenape Reg'l High Bd. of Ed.*, 2007 WL 269240, *2 (D.N.J. 2007) (citations omitted) ("The IDEA provides for direct appeal of an adverse administrative decision to the United State district court or state court. While the act requires exhaustion of administrative procedures, the final determination of a claim by an administrative law judge satisfies that requirement. . . . Here, the administrative law judge twice dismissed M.S.-G.'s complaint as insufficient, rendering a final judgment. Under the plain language of the statute, . . . M.S.G. has the right to appeal . . . the Administrative Law Judge's decision to this Court . . . . Therefore, this Court has subject matter jurisdiction to decide the appeal.").

inappropriate. We give 'due weight' to the state administrative proceedings. '[T]he fact-intensive nature of a special education eligibility determination coupled with considerations of judicial economy render a more deferential approach appropriate.' We give particular deference to 'thorough and careful' administrative findings." *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008) (citations omitted).

The Court will pause to note that these standards are difficult to apply in the current case because the ALJs didn't hold any due process hearings. Instead, they dismissed all three complaints for failure to state a claim. It's thus debatable whether the challenged dismissal orders can be said to contain "administrative findings" to which any deference is owed. The Ninth Circuit has explained that hearing officers in IDEA cases are usually tasked with the "resolution of conflicting evidence on the facts" and that federal courts should therefore apply a somewhat deferential standard of review because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Capistrano Unified Sch. Dist.*, 59 F.3d at 891. Here, however, the ALJs didn't purport to make any credibility determinations or weigh any conflicting evidence. It's therefore unclear whether the dismissal orders should be reviewed *de novo* or whether the "more deferential approach" that is traditionally applied in the IDEA context is still applicable.

Although the resolution of this issue might be outcome-determinative in another case, the Court declines to resolve it here. This is because the District is entitled to summary judgment no matter which standard is used. Accordingly, the Court will assume, without definitively deciding, that the unusual procedural circumstances of this case require the application of a *de novo* standard of review. *Cf. H.E. v. Palmer*, 220 F. Supp. 3d 574, 582 (E.D. Pa. 2016) ("The Special Education Hearing Officer did not conduct an IDEA due process hearing, but instead rested his decisions wholly on the pleadings. . . . Had the Hearing Officer done so, [its] factual determinations would have been entitled to due weight and deference. Instead, the Court reviews the Hearing Officer's decisions *de novo*, as they are conclusions of law that would not be aided by the Special Education

Hearing Officer's administrative expertise.").

**ANALYSIS**

I.   Common Issues

Oskowis argues, as an initial matter, that reversal is warranted as to all three causes of action because the ALJs committed various "procedural errors" that resulted in his claims being "prematurely dismissed." (Doc. 70 at 2-6.) Specifically, he argues that reversal is warranted because the IDEA requires ALJs hold a due process hearing in all cases, because the ALJs improperly converted the District's motions to dismiss into summary judgment motions, in violation of Rules 12 and 56 of the Arizona Rules of Civil Procedure, and because the ALJs didn't have authority under the Arizona Administrative Code ("AAC") to vacate his hearings.

These arguments are unavailing. First, as Oskowis seems to concede in his response to the District's motion,[5] there are several circumstances under which a hearing officer may dismiss a due process complaint under the IDEA without holding a hearing. *See, e.g., Smith ex rel. Townsend v. Special Sch. Dist. No. 1 (Minneapolis)*, 184 F.3d 764, 768 (8th Cir. 1999) ("Smith's first two IDEA claims were that the Special School District improperly denied him a due process hearing; we have already held that the dismissal of the due process proceedings was proper at the time it occurred."). Second, the AAC does not require ALJs to follow the procedures set forth in the Arizona Rules of Civil Procedure. Instead, they are simply given permissive authority to follow those procedures. *See* AAC R2-19-102(C) ("If a procedure is not provided by statute or these rules, an administrative law judge may issue an order using the Arizona Rules of Civil Procedure and related local rules for guidance."). Furthermore, in two of the three orders at issue, the ALJs concluded that dismissal was warranted in part because Oskowis had filed identical or near-identical prior complaints that had been rejected on the merits. (Doc. 75-1 at 6 [deeming complaint frivolous due to "the multitude of past complaints" and "the notice to Petitioners of the

---

[5]   *See* Doc. 70 at 2-4 (acknowledging various circumstances where it's appropriate to dismiss a due process complaint without a hearing, including "where the plaintiff has failed to state a claim upon which relief can be granted").

- 8 -

determinations made in [two prior cases"]; 75-1 at 16 ["[T]he instant due process complaint clearly arises out of the same circumstances and is based on the same factual and legal basis presented in the complaints in [two other cases], both of which were dismissed."].) It is permissible, under the Arizona Rules of Civil Procedure, to take judicial notice of a prior ruling for purposes of addressing a motion to dismiss. *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 226 P.3d 1046, 1050 (Ariz. Ct. App. 2010) ("[A] Rule 12(b)(6) motion that presents a document that is a matter of public record need not be treated as a motion for summary judgment."). Third, the ALJs had authority under the AAC to vacate the hearings. *See* AAC R2-19-102(B) (catch-all provision authorizing ALJs to "waive the application of any of these rules to further administrative convenience, expedition, and economy" so long as the waiver doesn't conflict with the law or cause undue prejudice to the parties).

II. Cause of Action #1: 17C-DP-013-ADE

Cause of Action #1 arises from proceeding 17C-DP-013-ADE, in which Oskowis argued the District (1) failed to monitor E.O.'s progress in relation to the objectives set out in his IEP and (2) failed to revise the IEP when E.O. wasn't meeting his STOs.

The District argues it's entitled to summary judgment because it satisfied its obligation under the IDEA to monitor E.O.'s progress, which is evidenced by multiple progress reports that Oskowis acknowledged receiving from the District, and because a school isn't required to revise an IEP midway through a school year whenever a student fails to satisfy his STOs. (Doc. 68 at 3-4.)

Oskowis responds that "[t]he creation and dissemination of progress reports by the District does not itself indicate that the District was appropriately and/or correctly monitoring the progress of [E.O.]" (Doc. 70 at 6-7.) He also argues that the regulations implementing the IDEA require the District to revise E.O.'s IEP "as appropriate," which the District didn't do. (*Id.*)

A. **Monitoring Progress**

The ALJ correctly rejected Oskowis's claims on this issue. The IDEA doesn't "set

out specific requirements as to how . . . progress [toward short-term objectives or benchmarks] is to be monitored or provided." *Jack P. v. Auburn Union Elementary Sch. Dist.*, 2005 WL 2042269, *17 (E.D. Cal. 2005). Rather, "[t]hat is left up to the IEP drafters." *Id.* With regard to monitoring progress, the regulations implementing the IDEA only require that an IEP include a description of "(i) [h]ow the child's progress toward meeting [his] annual goals . . . will be measured; and (ii) [w]hen periodic reports on the progress the child is making toward meeting the annual goals . . . will be provided." 34 C.F.R. § 300.320(a)(3).

Here, Oskowis isn't arguing that the IEP failed to include a method for measuring E.O.'s progress or failed to specify the frequency with which progress reports would be provided. Instead, he's simply arguing that the District didn't actually monitor E.O.'s progress as required by the IEP. The ALJ correctly rejected this claim—Oskowis's acknowledgment that he received three progress reports during the 2015-2016 year demonstrates that the District was monitoring E.O.'s progress. The IEP, as written, only required the District to provide three progress reports during the school year. (17C-DP-013-ADE, Due Process Complaint at 29-30: "Progress reports will be made available triannually or as often as the general education students receive their report cards.").[6]

B. **Revision of STOs**

The ALJ also correctly concluded that the District wasn't required to amend E.O.'s IEP, despite the fact that E.O. failed to meet any of his STOs. The IDEA only requires that the District "review, and where appropriate revise, each child's IEP *at least annually*." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 182 (1982) (emphasis added). The annual review is "to determine whether the *annual goals* for the child are being achieved" and the revision is "to address . . . any lack of expected progress toward the *annual goals*. . . ." 20 U.S.C. § 1414(d)(4)(A) (emphasis added). There is no requirement that a school revise an IEP midway through the school

---

[6] Portions of the administrative records were provided to the Court in DVD form and thus do not appear on the docket. (Doc. 69 at 2 n.1.)

year when a student isn't making progress toward STOs. STOs are merely "measurable, intermediate steps between the present levels of educational performance . . . and the annual goals," which can "serve as milestones for measuring progress toward meeting the goals," or "provide general benchmarks for determining progress toward meeting the annual goals." *O'Toole By and Through O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 703 (10th Cir. 1998) (citation omitted).

III. <u>Cause of Action #2: 16C-DP-066-ADE</u>

Cause of Action #2 arises from proceeding 16C-DP-066-ADE, in which Oskowis argued that the District denied E.O. a FAPE over three years because: (1) the paraprofessional provided by the District to E.O. wasn't "qualified"; (2) the paraprofessional wasn't supervised by the special education teacher; and (3) as a matter of law, a paraprofessional can't provide services outside of a regular classroom setting, but E.O.'s paraprofessional provided services to him within his self-contained classroom. (Doc. 69 ¶ 11.)

The District argues it's entitled to summary judgment because (1) the record shows that Ms. Parry—E.O.'s paraprofessional—satisfied all of the requirements to be deemed "highly qualified" under the NCLB[7]; (2) the uncontroverted evidence in the record shows that E.O.'s special education teachers developed E.O.'s curriculum, reviewed E.O.'s progress and achievements, and worked in close proximity to Ms. Parry, all of which constitute "direct supervision" under the IDEA regulations; and (3) "[n]othing in the IDEA's definition of 'supplementary aids and services' limits a paraprofessional's services to regular classrooms." (Doc. 68 at 5-7.)

In response, Oskowis attacks the validity of the evidence presented by the District during the administrative proceedings; he contends that certain evidence lacks signatures by special education teachers, affidavits submitted by the special education teachers weren't signed under penalty of perjury, and evidence showing that Ms. Parry is highly

---

[7] The NCLB has since been repealed and replaced by the Every Student Succeeds Act, Pub. L. 114-95, but during the three years at issue here, the NCLB was in effect.

- 11 -

qualified is only "unofficial" proof. (Doc. 70 at 7.) Oskowis doesn't, however, address the "supplementary aids and services" issue. (*Id.*)

A. **Ms. Parry's Qualifications**

The ALJ correctly rejected Oskowis's claims on this issue. Under the NCLB, the District was required to employ "highly qualified" paraprofessionals. To be "highly qualified," a paraprofessional must have a high school diploma or GED and satisfy at least one of the following requirements: (1) have completed two years of study at an accredited institution of higher education; (2) hold an associate's (or higher) degree; or (3) have obtained a passing score on a formal state or local academic assessment. NCLB, Pub. L. No. 107-110, § 1119(f), (c)(1).

The District submitted uncontroverted evidence during the administrative proceeding to show that Ms. Parry met these requirements. Ms. Parry holds a high school diploma (Doc. 69-2 at 10) and she obtained a passing score on Education Testing Services' ParaPro Assessment (*id.* at 12-15), which the Arizona Department of Education recognizes as an academic assessment for a paraprofessional to meet the "highly qualified" requirement. Furthermore, after the District submitted this evidence, the ALJ held a "prehearing conference" during which Oskowis conceded he didn't have any evidence to show the paraprofessional was unqualified or improperly supervised. (Doc. 75-1 at 10-11.) The ALJ wasn't required, under these circumstances, to hold yet another hearing.

Moreover, although Oskowis now seeks to belatedly attack the validity of the evidence produced by the District during the administrative proceeding (based on arguments he apparently didn't make during the prehearing conference), he still hasn't produced any contrary evidence showing that the paraprofessional was unqualified or improperly supervised.[8]

---

[8] Unlike a typical review of an administrative decision, where the Court is limited to the administrative record, under the IDEA the Court is authorized to "hear additional evidence at the request of a party." *Glendale Unified Sch. Dist. v. Almasi*, 122 F. Supp. 2d 1093, 1099 (C.D. Cal. 2000) (quoting 20 U.S.C. § 1415(i)(2)). Thus, if Oskowis had any evidence showing the paraprofessional was unqualified or improperly supervised, he could have attempted to present it here. *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 802 (7th Cir. 2004) (citation omitted) ("[W]hen no new evidence is offered—

- 12 -

B. **Supervision of Ms. Parry**

For similar reasons, the ALJ also correctly rejected Oskowis's claims on the supervision issue. A paraprofessional may "provide instructional services," NCLB, Pub. L. No. 107-110, § 1119(g)(2)(G), if she is "working under the direct supervision of a [special education] teacher" *id.* at § 1119(g)(3)(A). A paraprofessional works under the direct supervision of a special education teacher if: (1) "[t]he teacher plans the instructional activities that the paraprofessional carries out"; (2) "[t]he teacher evaluates the achievement of the students with whom the paraprofessional is working"; and (3) "[t]he paraprofessional works in close and frequent physical proximity to the teacher." 34 C.F.R. § 200.59(c)(2).

The District presented evidence during the administrative proceeding that each of the above requirements was satisfied and Oskowis subsequently conceded, during the prehearing conference, that he didn't have any contrary evidence.[9]

C. **Supplementary Aids and Services**

Finally, the ALJ correctly rejected Oskowis's claim that the IDEA prohibits supplementary aids from rendering services outside a regular education classroom. Under 34 C.F.R. § 300.42, "supplementary aids and services" mean "aids, services, and other supports that are provided in regular education classes, *other education-related settings,* and in extracurricular and nonacademic settings, to enable children with disabilities to be educated with nondisabled children *to the maximum extent appropriate* . . . ." *Id.* (emphases added). Therefore, the ALJ properly concluded that "supplementary aids and services may be provided in a variety of academic and nonacademic settings" (Doc. 75-1 at 11) and that Oskowis's arguments on this issue didn't state a claim as a matter of law.

…
…

---

as here—the cases are decided on summary judgment, which is the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.").

[9] Further, the ALJ noted that, during an earlier due process hearing, Oskowis testified he had never observed E.O. in the classroom and didn't have any first-hand knowledge of what occurred in the classroom. (Doc. 75-1 at 11 n.2.)

IV. Cause of Action #3: 17C-DP-053-ADE

Cause of Action #3 arises from proceeding 17C-DP-053-ADE, in which Oskowis filed a due process complaint using the "Model Due Process Complaint Notice" provided by the Arizona Department of Education. The complaint portion, in its entirety, stated that the District:

> "[f]ailed to provide the special education and related services indicated by the IEP for the time period from August 5th to December 16th, 2015. The District has indicated that services were not delivered until 9:00 am which would not allow enough time for the services of the IEP to be adequately delivered within the rest of [E.O.'s] schedule and considering the severity of [E.O.'s] disability, nonverbal, transitions, sensory diet needs, and incontinence."

(Doc. 75-1 at 15-16.)

The District argues the ALJ properly rejected this claim because, even assuming that E.O. didn't start receiving services until 9:00 a.m. each day, E.O. still received every service to which he was entitled under the IEP because the time to deliver the special education and related services in his IEP was less than the full school day's length. (*Id.* at 8-9.)

In response, Oskowis argues the District shortchanged E.O. "25 minutes a week," as evidenced by the schedule posted in E.O.'s classroom. (Doc. 70 at 8-9.)

The ALJ correctly rejected Oskowis's claims on this issue. A 9:00 a.m. start-time each day wouldn't have deprived E.O. of any of the services to which he was entitled under his IEP. The IEP required that E.O. receive 1,080 minutes of special education services each week (400 minutes of basic reading, 200 minutes of math reasoning, 280 minutes of interpersonal/social skills, and 200 minutes of workplace skills) and 90 minutes of related services (60 minutes of speech and 30 minutes of occupational therapy[10]). (Doc. 69-1 at

---

[10] Oskowis disputes the number of minutes that are devoted to related services—he argues the IEP actually required 120 minutes of weekly occupational therapy, for a total of 180 minutes of related services per week. (Doc. 71 ¶ 31.) This is incorrect. The IEP required 120 minutes of occupational therapy *per month* (Doc. 69-1 at 24), which results in an average of approximately 30 minutes per week.

- 14 -

24.) This equals 1,170 minutes of special education and related services per week. The average school week includes 1,900 minutes of potential instruction time (8:25 a.m. to 3:15 p.m., minus a 30-minute lunch/recess).[11] Thus, even assuming that the District didn't begin delivering services to E.O. until 9:00 a.m. each day, this only eliminated 175 minutes (5 days multiplied by the 35-minute gap between 8:25 a.m. and 9:00 a.m) of potential weekly instruction, reducing the total available time from 1,900 minutes to 1,725 minutes. The 1,725 figure still exceeds the 1,170 minutes to which E.O. was entitled.

Accordingly, IT **IS ORDERED** that:

(1) The District's motion for summary judgment (Doc. 68) is **granted**; and

(2) The Clerk of Court shall enter judgment accordingly.

Dated this 19th day of February, 2019.

_____
Dominic W. Lanza
United States District Judge

---

[11] Oskowis disputes the length of E.O.'s lunch, claiming it's actually 40 minutes. (Doc. 71 ¶ 29.) Even if true, this doesn't affect the Court's ultimate conclusion.